Please be seated, Mr. Clerk. Would you please call the first case? Okay, will both sides step up, please? Identify yourselves for the record. Good afternoon, Justice Sterbuck, Justice Hyman, and Justice Pierce. Clint Krislov on behalf of the consumer class, as well as Mr. Morrison, Mr. Kimmon, and Mr. Underwood. Good morning. I'm Jim Metropoulos of Mayor Brown, LLP, appearing on behalf of the defendant, FLE Illinois Bell, also known as AT&T Illinois. Okay, thank you. Gentlemen, we've reviewed both cases extensively, and because the background is basically the same, we're going to start with the late charge litigation case first. And let's just deal on the issues pertinent to those cases. And there probably will be overlap between the two, and we'll take that into consideration. Okay, do you want me to deal with them separately? Do the late charge case first, and then we'll do the condom case second. But understand that there may be overlap in both, and we do understand that. Okay. Clint Krislov, class counsel in this case, your honors. From July 5th, 2002 through February 28th, 2010, Illinois Bell collected $126,178,865 in late charges from consumers that it had no right to collect. It didn't do that by mere oversight. In fact, we had initially, because the case started off in the 1990s and was resolved, was brought because of Bell's failure to date stamp the envelope in the indicia position, which we brought the examples of what they actually look like. The first one is right after the settlement. Let me interrupt you. Yes. This case involves the enforcement of a settlement agreement. Yes. The appellate court has already held that there was a breach of the settlement agreement. Yes. Remanded the case back to Judge Palmer. Yes. On that basis. Right. Which seems to me meant, now we're talking about damages. That was my view. Okay. And I think that was Judge Palmer's view. Well, the issue Judge Palmer reluctantly found over. The reason I interrupted you is that's all beside the point. Not exactly. Not entirely. But we would say, yes, on remand it was our view that all that was next was to enter summary judgment for the class on the breach of contract and award the damages. Now the damages are clearly the amount that Bell charged, which they had no right to. What do you mean by clearly? Doesn't there have to be a nexus of some sort between the breach? The appellate court said there's a breach, right? Right. Okay. And they remanded. One of the elements of a contract is that there's damages resulting from the breach. Right. And that's causation. Right. And isn't that what Judge Palmer said? You need to show some causation. And you're saying, no, I don't. No, no. Sorry. Don't. Arguably, you need to show some causation that the breach caused damages. The breach was their sending out bills without a dated mark on the envelope. And they're charging the class for the late charges when they had no authority to charge them. It is from the breach that they charge the class late charges on bills they had no authority to charge late charges on. The case and the contract go back to the regulation, which clearly says the company may assess a late payment charge in accordance with tariffs approved by the commission against the amount which is considered past due under this section. That's the administrative code section. Are we with the ICC regulation? We're dealing with enforcing the settlement agreement that was entered into 15 years earlier. So we're dealing with the settlement agreement and the breach thereof. Right. And the appellate court held in its order in 2010 that there was a breach. Right. Remanded it to the trial court. That indicates to me that you've established the breach of the settlement agreement. It's the law of the case. Now, what are the damages? And you and Judge Palmer for years went back and forth on the issue of what are the damages? What damages were caused to the members of the class by this breach? Okay. And both of you agreed, as I read the record, that some customers of AT&T paid the bill late because they didn't have the money, they didn't want to pay the bill, they couldn't pay the bill, decided not to pay the bill for whatever reason, were out of town and paid it late. The late payment fee was for reasons other than breaching the settlement agreement. And he, in my mind, is saying, so how are we going to prove or establish the amount of money to be refunded or returned to those damaged by the breach? And you said, you don't have to go that far. It's a complete forfeiture. Right. My difference or our difference with Judge Palmer is that his view is we have to show that customers were induced to pay late by their failing to date stamp the envelopes. Our view is that Bell never had the authority to charge, impose, or collect a late charge unless there was a dated envelope because the bills were not late. Excuse me, the payments had no due date for late charges. And that's because of the regulation, not because of the settlement agreement. Well, the settlement agreement incorporates the regulation because it obligates Bell to date stamp those envelopes as long as the regulation remained unchanged. It says put a dated mark. They didn't put a dated mark on the envelope. They don't assert that they did. Right, there's a breach. Your case is that because they did not follow the contract, which is the settlement agreement, if so facto, anything they collected as a nature of a late fee is damaged. Right. And I guess the question is, how can you say that? What do you rely on to make that judgment? Because the contract incorporates the regulation. The administrative code provision says you can only charge a late charge where the utility has done, followed the required statutory procedure in order to impose it. And in order to impose it, they had to have a dated mark on the envelope. If they don't do that, they don't have the right to collect it. The agreement clearly incorporated as long as the regulations were unchanged. And they were not until eventually 2010. This was not oversight. The e-mails show, I mean, it's fun to read e-mails with your name in it. The e-mails show they intentionally did this knowing it violated both the regulation, the administrative code provision, and the agreement. They should have gotten a waiver. Everybody acknowledged in the e-mails, whether it's the ICC, AT&T, certainly us, everybody recognized. All that goes to breaching the agreement. We're talking about damages. So I'm a member of the class. I get an undated bill. I throw it in my drawer. I don't pay it for two months. Gonza me, I didn't pay it, or I was out of town and didn't pay it. And I pay a late fee. Under your theory, I get that late fee back. Right. Because of what relationship to the breach. It's a windfall to me because my nonpayment was not because of the breach or due to the breach. It was because I decided not to pay it. I just saved $4. I got a windfall. The bill's entitlement to charge you a late fee arises only from the administrative code. If they don't comply with the code, they don't have a right to charge you that. And under the agreement, they breach the agreement by intentionally omitting the date stamp to say 23, 26, 1000th of a cent on your bill. And so to do that, they don't have the right to collect the late fee from you. They might have the right to turn off your phone service. They might have the right to call you and complain you haven't paid your bill. But they don't have a right to charge a late charge unless they've complied with the administrative code. But there's two things. And I think you're talking about the other case. The other case before the ICC would be that administrative rule. But you're relying for the damages in your settlement on the administrative requirement, correct? Yes. The agreement incorporates it. It incorporates it, but it doesn't incorporate it. That's the issue. How does it incorporate it? You're saying it incorporates it such that it becomes a basis for determination of damages. But you could look at it differently. That is, what it does is it incorporates it for purposes of a breach. You have a breach. It doesn't excuse the necessity of showing damages because you're not acting under that statute. The ICC said, well, of course, you're under the settlement. That settlement agreement has been breached. We're done with that. But with regard to damages, we're not going back to the administrative statute. Don't you have to show that the breach that resulted from the settlement agreement resulted in damages to the individual class? But unjust enrichment is an appropriate contract remedy. I mean, the fact that you're not entitled to take my money means you have to give it back. That's the breach. That's the damages. Otherwise, what's the whole purpose of the exercise? There is none. Other than to say, geez, we'd like you to do this. The fact is Thomas recognizes that there is a difference between an illegal charge and an excessive charge. Judge Palmer had a stretch to make the reparations claim. Well, that's the second case. But Judge Palmer had a stretch to make it into a reparations case, where tinker led to heavers to chance, was that Bell asserted that, well, Morrison hasn't paid late since the first settlement. So you've got to get a post-2005. Let's say on the breach of a settlement agreement. It's a contract claim. It's a contract claim. Because now, like your breach, both sides. You're acknowledging what the issue is, but getting off on two different sides. Okay. Let's stay on this issue. This issue is, if there is a breach of this agreement, what is the purpose of the agreement to enforce, and what purpose does the agreement have, and what remedy? And the remedy, we assert, is that they knew that they were obligated to continue date stamping these envelopes so that they would be postal service checked. And if they don't do it, to require people to go up individually to prove it, it means there is no requirement that Bell comply with the law. Yes, there is. There damages might be. I'm just suggesting this wasn't your theory. Twenty-six to one thousandth of a cent per customer per month. No, that's what Bell saved by not dating. Exactly. That's exactly the damages. Because that's what they saved, putting everybody back in position. The fact is that there's a disconnect. To say that the full late fee should be returned to somebody who's late, that's not your case anymore. Sure it is. It absolutely is. That's the question. But it's only your case if you bring it under administrative act, but you're not. You're bringing it under your breach of contract. You still have to prove causation. Well, we got causation from their intentionally breaching the agreement. No, that's the breach. The breach caused me damages. You breached it. And your damages are that you paid a late charge. That's it. Because of the breach? No, I didn't pay the late charge because I didn't want to pay the late charge. I was in Palm Springs for three months and I didn't get the bill. Whatever. Bell still had no right to collect the late charge from you. How does that damage me? You paid a late charge which you were not obligated to pay, which they had no right to impose on you. It was not a result of their breach. It was a result of my intentional decision not to pay it on time. Now, granted, and I think in your initial litigation, the claim was if the bills went out without the postmark, I may have only had 20 days to pay my bill as opposed to 21, and therefore it was improper. And it ultimately resolved itself into a settlement in the circuit court. Okay? That's what happened. Well, we discovered that, but it wasn't necessary. But it seems to me that you presented the trial court with only one method, measure of damages, and that was complete forfeiture, which would result logically to a windfall to members of the AT&T customer base who were not damaged by the breach. It's not a windfall. Well, it is if I decided I wasn't going to pay on time for reasons other than the postmark or dated mark. I am getting a windfall because I benefited by something they did that had nothing to do with causing me damages. I owed the money. You didn't owe the money. You didn't owe the late charge. Under a regulation that is not what we're going under, we're going under a settlement agreement, a contract between the class and AT&T that basically provided, after the payment of the $3 million in fees and a refund of 45 cents if they didn't opt out of the class, that was complied with. The second part or third part or 15th part of the settlement agreement was that in the future, AT&T was going to put this mark on the envelope. With no provision within the contract for a remedy in the event that... Sure. What is it? The remedy was that if the court finds on its own motion or on the motion of the plaintiffs that Bell has not made a good faith effort to comply with this paragraph or with its obligations under this settlement agreement, the court may enter such further orders as the court may determine are necessary and appropriate, including additional attorney's fees for obtaining such compliance. That's paragraph 55 of the agreement. The court had full authority to fashion an appropriate remedy from the breach. But they don't have to give damages. What you have to do, the only way you get damages, as you've already said, is if there's a finding of a violation of the administrative code regulation that was incorporated. But that provides for a separate type of remedy. What we have here is a settlement agreement, and that's what was breached. So what you're really saying is that you can come in, get injunctive relief to stop doing that, and you could get attorney's fees for that. That's exactly what it says. If that was what happened, then that... If there's anything about damages going automatically or there's late fees... Such further orders as the court may determine are necessary and appropriate, the court could fashion an appropriate damages remedy. Okay. But they can't throw out the law. They still have to follow the law, which requires that the damages, like any other. I mean, there's no difference between a breach of a settlement agreement and a breach of a contract. I mean, the law is the same. Right? Do you agree with that? Same thing. I presume yes. At least the settlement is the size of a contract. So, therefore, you still have to have damages resulting from the breach. And that's where we differ. We and Judge Palmer and you, and that's... We're saying it's a freebie. That's what they're saying. It's not a freebie because they don't have the right to collect a late charge unless they have complied with the regulation. They are the ones getting the windfall. Yes. But that is your other case. That's your other case. That's not this case. This case is a breach of contract case. This is not a case where they violate... where it's only that what the agreement said is, you use the regulation that you must follow. It doesn't incorporate all the other stuff regarding restitution and everything else. This is a breach of contract. And that's exactly what the appellate court did when they sent it back. They didn't send it back and say, get the agency to write a check. That's really... In our view, that's what we believe was all that was left. Because otherwise, the whole purpose of the exercise is utterly worthless. No, because there may have been a vehicle to present through expert testimony, a way of analyzing the late charges, deciding perhaps I'm making this up, I didn't really give it a lot of thought, that I reviewed the late charges, which you had obviously tremendous discovery on as to the amounts of money collected during this period. We didn't have tremendous. We had to force them to unseal. The late charges were filed under seal so nobody could see them. But you got them. We got them. You got them, and you said $126 million or so. And perhaps they could have been analyzed and broken down by late charges paid for being two days late, five days late, three months late, two years late. And then perhaps an expert may have said that, you know, based upon this analysis, those paying 30 days after billing, in my judgment, were for reasons other than non-compliance with this agreement. And those paying within five days of the due date could reasonably be connected to a breach of this agreement, and that amounted to 10 percent of the payments, and therefore reasonable damages to those who paid within two days or five days. But that's not the theory of the case. I understand that. And your theory of the case brought to the court is we do not have to prove damages to the individual due to the breach. We only have to prove a breach, and therefore the award is a forfeiture of that which was collected. That's your theory. And Judge Palmer had no other alternative. So to me, in looking at all that transpired over these four or five years that you were battling it out with him, in a professional way, of course, was basically a summary judgment proposition that you've established a breach. I'll assume for the purposes of this discussion a breach has been established. You get judgment on liability, but you don't get an award of damages because no damages have been proven to the court's satisfaction because you won a forfeiture, and I don't think that's an acceptable measure of damages. That was his theory. That was his view of it. We don't agree because of the context, the twofold context. One is that they were never entitled during the whole period, they were never entitled to collect, to impose a late charge because their billing process didn't comply. The number two, that was the breach. And it was an intentional breach. The e-mails show that they knew that they were going to violate the administrative code and the settlement and chose to do it hoping that nobody would catch them. In contract law, is it not correct that if one intentionally breaches a contract, damages may be awarded for the breach, not punitive, not punitive damages, but for the breach? Well, for unjust enrichment. This is an enforcement of a settlement agreement. It's a contract. But unjust enrichment is still... Sorry. It's a contract law. A breach, whether intentional or inadvertent, allows for the award of damages that must be connected to the breach. And that's the way I think Judge Palmer saw it... That's how he... that the litigation should be terminated because where are we going to go with this? We were glad that he entered... Not that he entered. Some were judging for them, obviously. But we think it is a straight issue of law. Whether they come to... We knew they violated the contract. We knew they violated the right. We knew they had no authority to collect this money. And so what we view as the wrong here and the appropriate damage is the damage is that they collected a late charge they were not entitled to collect. You just said something really important. You said, we know they violated the record. We know they violated the contract. Those are two separate things. That, what you say, those are one and the same, right? Well, the contract incorporates... The contract intentionally incorporated the provisions of the code because it said that as long as that Bell's commitment, Bell agrees that it will place a dated mark readable by the customer and show natural date of mailing on each customer bill or Bell mails for so long a time as the applicable statutes and or regulations have not been changed or a waiver granted to eliminate the requirement of bill dating on customer bills or Bell envelopes. So necessarily, I understand the concept that we're viewing these as two separate things, but there is no doubt that the agreement incorporated the regulation because I had the enforcement, the monitoring authority. And the regulation stayed the same until they finally, because they finally got around, they finally decided they couldn't legally do this without changing the regulation and they got it changed and they, you know, it was a separate case. They squared it through so I wouldn't find out until after the fact. That again is beside the point. It's beside the point, but... So let's stick with the point. But the point is, in our view, and this is really the crux of case one, if you will, that they're intentionally violating the agreement and the regulation, meant that they were charging an illegal charge and they weren't entitled to collect it. When they're charging an illegal charge, one way to look at it, that's the other case. That is the other case. I'm glad to address the case. That is the other case. That is the other case. This case is not the illegal charge. This is a breach of contract. There's a difference. And the settlement agreement did not provide for any type of determination of what the damages might be if there was a breach. Speculating on what the court... I mean, that's why the order says, that's why the agreement says, may determine are necessary and appropriate. That's in the context of, we're going to give Bell, or AT&T, 150 days to get their act together and comply with the settlement agreement. And if the court finds that they haven't, in good faith, within 150 days, amended their stamping procedures, it really doesn't address... No, it doesn't. But the reason that we didn't do it that way... Well, it doesn't matter. Under the contract, you have a non-reliance clause, you have an incorporation clause. Under contract law, unless there's an ambiguity, we stick to the contract. But this is an ambiguity. You're reading our limitation. You didn't argue an ambiguity in the circuit court. We're not saying that it's ambiguous. The statement, the court may enter such further orders as the court may determine are necessary and appropriate, that would include fashioning whatever relief. The reason that the parenthetical after that, including additional attorney's fees for obtaining such compliance, is if we discovered within a week or two after the first bills came out and they changed their practice immediately so that nobody wound up paying a late charge, that said that there would be legal fees for a just injunctive relief enforcement. That's the only implication from that. In other respects, there's no limiting factor. Contracts are written broadly to enforce, to accomplish their purpose. And the limitation that this was only for prospective enforcement is not in the contract and is not a fair reading except from that last tail end clause, which would include a provision that would give attorney's fees even if no monetary recovery was obtained. And that's not an ambiguity. That's just how contracts are written to provide for whatever enforcement the court deems appropriate. I'm not sure where my time is, but I'd like to reserve it. We'll give you enough time. But in order to stay on the enforcement of the settlement agreement issue and the late charge litigation, let's hear from counsel for the dependent. Then we'll get to your common issue, and then we can wrap it up. Okay. All right? Is that fair? Absolutely. All right. Thank you. Thank you. I don't think we need to rehash. I don't intend to. Okay, great. Thank you. This is a contract action. We've passed the issue of breach. One fundamental requirement in a contract case is it's not enough to show there's a breach. If you want money, you have to prove damages, and you have to show a nexus, causation, damages caused by the breach. Okay, so his argument is that ending settlement agreement incorporates the administrative code, the language of how the dating should be on the envelope. The agreement does just the opposite, Your Honor. If you look at paragraph 52, it's a release and permanent injunction against any claim based on the lack of a postmark or other dated mark on customer bill envelopes. The exclusive remedy is enforce the agreement. My opponent could have put on a case for a specific performance. That's what a necessary and appropriate remedy is. That would have made sense with the attorney fees and everything else. You can go in and drive them from breaching the agreement. Correct. We would have put on a breach, and we would have put on a case. Well, okay, there's been harm. Whatever. We could have put on a case for it, and we could have argued about it or whatever, but that was never brought until the agreement expired in March 2010. So you're saying there's this jump to say that by not following that language that's in the administrative code, he's saying that that provides a remedy here. If you don't see the basis. No, because the agreement permanently enjoins any claims based on the regulation. That's the case that he tried to bring in 2006, and then this court affirmed the dismissal because it's like, wait, you've enjoined yourself past and future conduct. You can't make claims under this regulation. You can't make these kind of strict liability claims under the regulation. You have a recourse under the agreement, specific performance if you like, and Judge Palmer gave my opponent ample opportunity, multiple reminders. Put on a damages case. Put on causation evidence. And at the end of the day, after hearings and hearings and briefing and briefing, my opponent conceded in front of the judge. He said, look, I'm not putting on a damages case. We're not saying that anyone paid late because the dated mark wasn't on the surface of the envelope. That was his concession. And there was simply a disagreement about what contract law required, and I think we all agree that contract law requires more than just a breach and then you get a blank check. You have to have causation and damages. Now, my opponents had opportunities to put on a damages case. They had the opportunity. Judge Palmer entered judgment on the issue of breach for them, but he said, now we've got to go to the other elements here, cause of action. And as Justice Pierce, as you acknowledge, this is why they threw in the towel on damages and causation, because there was no way to make the case. There's lots of reasons why people pay bills late. They don't have anything to do with where exactly the dated mark appears. And I want to make clear that the alleged breach or the breach here is not about giving them a dated mark or not. We gave them one. It's just the placement. We put it on the bill in the window of the envelope. If someone had said, well, that caused me to do something, it caused me some loss, they could have come forward and put on the evidence. They never did. They had time. They had warnings from the circuit court. For the first eight people paid bills late because they forgot the bill, they lost the bill, they were in Palm Springs. And this is clear, too, from the evidence that for the first eight years of this settlement, AT&T was putting dated marks on the envelope. There was no dispute about compliance. People were still paying late. They were still paying extra charges for late payments. In fact, when AT&T started putting the dated mark in the window, the late payments went down. My opponents also had a full opportunity to test our billing practices. The uncontroverted evidence showed, and the circuit court found, that AT&T gives customers 21 days from the date of mailing to the due date. Systems are set up, in fact, so it's computer controlled start to finish. AT&T can't even put out a bill with less than 21 days. The computer shuts it down. That's part of the control we got for moving the dated mark to the bill where it's controlled. The address breach. Yes. The breach has been established. It's the law of the case. Correct. We agree. So let's forget the breach. What I was trying to do there, Your Honor, was just explain why there could be no showing of damages because, you know, first off, we know that there are other reasons why people pay late. The evidence shows late payments going down, not up. Well, isn't the issue in this case not whether there could be no showing of damages. It's whether the plaintiff decided this is the theory of damages I'm presenting to the court, which is basically because they breached the agreement and collected money, they should forfeit all monies collected, period. I agree. Okay. Why is that inappropriate? It's inappropriate because, first off, the contract doesn't say that's the remedy, and, second, contract law doesn't say that's the remedy. Contract law says you have to have a nexus. You have to show I was economically harmed. I had an economic loss, and it was caused by the breach. You know, because the dated mark was in the window, something happened, and really I can't conceive of the set of circumstances under which it would, but it caused me to pay a late fee. And then he would say, okay, then you put on your case. And we'd say, well, how many people can put on that case? Whatever. We argue about the evidence. No such showing here. My opponent basically decided I'm not going to try to put on a damages case. I'm not going to put on a specific performance case. I'm going to shoot for the moon. I'm going to go for this mass forfeiture, all late payment charges, eight years across the state, $100 million, no showing of damages, nothing, no showing of any causal nexus between the movement of the dated mark or where it was placed and that action. He's basically asking for you, basically trying to convert this into another case, which is a reparations case under the regulation. That belongs in the commission, and we'll talk about that later. Just explaining it. In the settlement agreement, there is a reference to the regulation. There are two references to the regulation. One is permanent injunction, no claim based on the lack of a postmark or other dated mark on customer bill envelopes. Okay. That's gone. The only other reference to the regulation is to set an end date. Your contract obligation is put a dated mark on the envelope. That lasts only so long as the regulations have not been changed, which they were eventually clarified in March 2010. That sets only the end date, but it doesn't say anything about what are the remedies before the end date, what is the conduct before the end date. There's no incorporation of the regulation at all. There's a release of the regulation. What's left is simply the contract. Go in and seek an order for specific performance. If that's what you want, you go get your attorney's fees. Enforce the agreement. Enforce the agreement. Then the agreement expires, and my opponent says... I don't want to enforce the agreement. You have to show recent contract. Correct. Correct. And Judge Palmer gave them plenty of chances to do just that. One other reference. There was a note about the cost savings to AT&T. That was not a damage that was suffered by anybody in the class. That was actually, in our review, a benefit to the class because it saved us money, and it gets the bills out faster. The post office doesn't have to sit there stamping every bill. We don't have to sit there putting a meter mark on every single bill. We do it in bulk by a manifest, and the post office truck is on site. Boom. It's out, and it's under computer control to make sure we give people enough time to pay the bills. I don't have anything further, unless you have any questions that you'd like me to address. No. Thank you. Thank you, Your Honor. Counsel. Counsel, a brief rebuttal on the lay charge litigation. Then you can get right into your common case. Okay. Is that all right? Absolutely. Okay. For one thing, there was no evidence in the record that the lay charges went down when they moved things from the envelope into the window. There's just no evidence of that. But it doesn't really matter. The regs weren't clarified. There's double speak of the regs were clarified. They went and got them changed to eliminate the dated postmark requirement. And the postmark requirement, although they make it seem as if what we're asking for is some person in the back room with an eye shade and arm garters and a quill pen to stamp each bill, what we're talking about is eliminating an inkjet sprayer at precisely this point in the production facility as the envelopes go by that sprayed on that March 24th, 2001. It's just, you know, they're... It deals with the breach. I'm just addressing what he... Okay. Your difficulty in this case is, given this is the issue, and I think you'll agree, given, or where it's established, that a settlement agreement has been breached, does the non-breaching party, as damages, get a forfeiture of whatever was collected by virtue of the breach? I guess I would phrase it, can. I mean, is that a potential damages claim? I mean, yes, I would say... Well, that's all you presented to the court. That's it. That's your only theory is they breach, they get everything. Right. Or the class gets everything. Right. They breach and... Is that the appropriate measure or proof of damages? Do you have any cases that provide for forfeiture as damages to the non-breaching party? Well, I have to think about that one, and I may have to get back to you on one. I'm sure I can find them, because in context, the breach of an agreement and the damages resulting from that relate to the agreement itself, and what is the purpose of that agreement? Let's say, for example, I have a contract with you to build a building for you for $100 million, and I contract to have it completed by March 1st, right? Right. I build the building, but I don't complete it until April 1st. I'm in breach of the contract. That's a different issue. No, I'm in breach of the contract. It doesn't mean... Now, do I forfeit everything, or do you have to establish how my turning the building over to you a month late damaged you? In context, it might be caused, and not just by the late, because there can be, let me pose you... It's a breach of contract. Well, but the breach relates to the purpose of the contract. If I deliver you a building which has asbestos in it and I have paid you a bunch of money... No, I delivered the building late. Your damages typically would be because it was late, I had to pay rent somewhere else, I incurred more expenses, it took me more time to move my machinery into the building, whatever, but you would have to establish damages. You just can't say, you're late, give me everything. In the context of that relationship, it is the norm to be sure that you get delayed, because you want to move into the building. Okay, what's the context of this case where forfeiture is the appropriate measure of damage? If in the contract one party can walk away from the other and not have to incur the charge, and shouldn't have had to incur the charge, they get it back. And I'm certain that we can find you cases where a party has breached and a penalty provision, because that's what a late charge is, is a penalty provision for paying late. My guess would be that's in the agreement. Well, here... No provision in this agreement for any penalty or forfeiture. But not necessarily. If you have to pay a late charge for the building, I build the building for you, I deliver it late, and you say you want a late charge, and you grab my deposits, or you grab some earnest money that I put up, and I say, wait a second, there was no provision in the contract that says you can collect a late charge. You may not have a right to collect it. You may have to give it back to me. And I'm sure I can find contracts that do that. Damages that would justify not the taking but the award of damages, not the method of recovery but whether I'm entitled to recovery. Well, the question is you got my money, or I got your money, I forget whose. You took my money, and you weren't entitled to it. So I get it back. If there wasn't a delay provision that would entitle you to grab my money for being late, you may not have a right to keep that, and you may just have to give that back. They're still paying for their phone service. The only question is whether there is an obligation to pay a late to, whether there is an authority to collect or an obligation to pay a late charge. Let's change the hypothetical. Let's look at this case. Instead of putting the date inside the window, the breach is that they start collecting late fees after 15 days. Under your agreement it says 21, right? If they did that. The regulation requires the due date to be no earlier than 21 days after the date of the postmark. That's in the regulation that you say is incorporated in the agreement. Right. So you would say, under my scenario, if they did that, would you have a cause for a breach under the agreement? If they could in. . . If they started, they didn't change envelopes, but they did the same 15 days. Oh, if all they did was change 15 days, we might not. And here's the reason why. Because the date in its place gives a United States Postal Service audited indicia of that, the date that it was sent. And so, and that's the purpose of the reg, of the administrative code provision, so that a customer can look at the envelope, see the mailing date, see the due date, and subtract 21 days and see if they got that. But they can still do that. No, they can't do that. Under your scenario, they could do that. They would not be charged. They would be illegally collecting late charges because they had only given 15 days. But the customers would have the ability to compare from the mailing that they got and see that it hadn't been done. In our case, they cannot do that. Well, only because of where it's located. Well, but there needn't be. In your scenario, there needn't be a date. But it's a preaching contract. And I was still going back to Justice Pierce's question, why did that read out causation? Because where we differ, where I differ with Judge Palmer, is that causation is shown by their collecting a late charge they weren't entitled to. Their view and Judge Palmer's view is you still have to, it gives them the presumption of authority to collect any late charge. They were a regulated utility. They don't just get to put on whatever charges they want whenever they want it and get the presumption from that. Customers get the presumption. Customers get the protection of the administrator. The last thing I want to address in my colleague's argument is the effect of the release. The release was a standard release that was never intended to bind people for, to preclude them from getting a recovery of Bell breached in the future. It's standard in class action cases to have the parties, to have the class release the defendant from all claims that arose during the class period. Because the class was defined, and so the class that had these claims released Illinois Bell from those claims. But this provided for future enforcement. Maybe we can go on to the next case. Please. Okay. So the two cases only arose separately because Judge Palmer said, well, you know, Bell said Morrison, who was a class representative in late charges, hadn't paid a late charge after 1993, and so he didn't have standing. I would differ, but, you know, we try to go along with it. The judge raises something that whether we agree with it or disagree with it, if we can comply with it, we can move that aside, we do. So Kamlin was the response to Judge Palmer's suggestion, what you need is somebody who paid a late charge after 2000. I think he said after 2005, but it was after 2002. So, okay, so Kamlin was up. And that was appropriate. And then Bell said, well, Kamlin's precluded because Kamlin had a phone account back in 1991, and so the release precludes him from filing a case. Okay, we'll go along with that. Underwood pops up and says, I wasn't a phone customer in 1991. I paid a late charge after 2005. I have standing. While this issue was, and he should have been allowed to intervene, while they were briefing that issue, I presume they were going to come out against it, but whatever, Scheffler comes down and says that if something is reparations, it goes to the Commerce Commission. Now, we had already been there from when they called this bluff back in the first case, so I filed a case in the Commerce Commission, and that's where we got the discovery that showed the breach. Okay, so we have this case, and the issue is, now the issue becomes, because they grab on to Scheffler and they say, this is really reparations, so that if you have standing, this is now a reparation claim, even though in the settlement, and this is, I guess, why they want to keep the two of them apart, because in the settlement agreement, they acknowledge the court's jurisdiction to address the issue, the breach, the compliance, the whole thing. Well, it's not really the breach, compliance, the whole thing. It's a breach of the settlement agreement is that case, because you had originally filed at the Commerce Commission. No. Originally? No, originally, no. Originally, late charges was filed in the circuit court, directly. Okay, but you did wind up in front of the ICC, and before you went to trial at the ICC, you settled the late charge litigation. So there was never a declaration by the ICC that they didn't have jurisdiction, and you just happened to settle, not happened, but you settled a class action case in the circuit court, so you had that litigation. Okay. So however you got there, this Kahneman case in Underwood is basically the issue of whether your claim for damages is one for reparation, or is it other conduct that is not within the exclusive jurisdiction of the ICC. Isn't that basically it? Yes.  Is something that the circuit court has jurisdiction to hear, and why it's not within the exclusive jurisdiction of the ICC. Because that's really the issue, right? Right. This is, and Thomas says that the difference between an overcharge and an illegal charge is the difference between damages, a damage claim which belongs to the circuit court, and a reparations claim which belongs for the ICC. Judge Palmer had to reach to come to the conclusion that this is a reparations claim, because he acknowledged in his order that what they're saying is that there was not compliance with what would enable authorized Bell to impose this charge, so we can consider it an overcharge or a charge that is excessive or discriminatory. Excessive refers to quantity. This is not an issue. Nobody's challenging the rate. Nobody's challenging the amount. What we're challenging is the legality of the practice. And certainly nobody came up with, nobody, even they didn't come up with an argument that it was discriminatory. I mean, we're not, you know. No, I don't want to stay away from that, because that's not an issue. But that's the problem, is if we reach to get to this, if we try to get everything into reparations, then we're taking us outside where the ICC has exclusivity. And, you know, at best, there might be an argument for, you know, they could have made an argument for primary jurisdiction that you have to refer to the ICC for their opinion, but that's not really their argument. But Sheffler is very clear that if it's a reparations case, it belongs in the ICC exclusively, correct? So the question is, is this inappropriate late charge taking your claim at its best? Can that be heard in the circuit court? Yes. And that, because it's an illegality issue, makes it a damages claim, for which there was explicit circuit court jurisdiction. So is it, how do you address their argument that it's part of their tariff, it's a charge, it's a rape? Oh, that, you know, that one they. Which makes it exclusive to the ICC. Yeah, but they could say that they could put kidnapping children in their tariff and say that because kidnapping children is in their tariff that it's a legal thing to do. They cannot put in a tariff something that conflicts with the administrative code provision. They can't change the legality of everything by just sticking it in a tariff. I mean, a tariff is made for a rate. They want a charge. In fact, they change the charge. It used to be 1.5% per month, and now they change it so it's now 1% a month, but it's at least $5, which means that they're increasing it. And we're not complaining about that. It was authorized by the ICC. Well, they just filed their tariffs and go. That change may have been authorized. We're not challenging the amount. They have a right to, you know, that procedure, that's how that procedure works. Like it or not, it's not a part of this case. Well, if they had a tariff of charging $1 per phone call, and it turned out they were charging $1.50 per phone call outside in excess of their tariff, is that the charge that can only be issued here? Is that something that would be exclusively within the purview of the ICC, or could that be blocked in the circuit court? If the administrative code provision said that they could only charge a flat monthly rate and they put in their tariff that they were charging a per call rate, that they were charging a per call charge in addition, they would be violating the administrative code provision, and then they would be actionable in court. But if indeed what they did was that the administrative code says, and they can charge a per call rate, or they can charge per call, they put in the tariff, whatever they put in the tariff, you know, I presume we're stuck with. But that's not. That's different. The administrative code provision is not one that requires expertise on phone service or anything. It is a mailing procedure. It's a mailing requirement. They had to date. They had to have a dated postmark on the bill and a due date that was at least 21 days after the date of the postmark on the bill envelope. If they cannot by tariff change that and make their own laws, this isn't like fiefdoms in pre-Italy Rome where, you know, a kingdom can cover whatever is within its turf. They could not. You're saying any violation of the administrative code brings it outside the exclusive jurisdiction of the ICC? No, but where it is a non-expertized area, such as the mailing procedure, and where that is set up, where that is directed clearly by the administrative code, they can't by tariff just make their own laws on everything. They can't, you know, and that's not. Doesn't Scheffler say that the ICC has exclusive jurisdiction over rates and rates are defined as including charges and charges are defined as including late fees? Well, there aren't that many bases in Tinker's Davers that chance, in my view. But they're stretching Scheffler to that extent. I think stretches that then Thomas would be wrong because Thomas says they're using this to collect their bills and this is what they do to collect bills from people who went bankrupt and this is how they're collecting bills and so you're collecting bills so it's all covered by reparations. Thomas says that's not right. That the difference between, at least for Thomas' purposes, and that would govern us too, is where it is an assertion that the charge is illegal, not just excessive, not just discriminatory. There wasn't an illegal charge in Thomas. The charges were legal. They weren't contesting the charges. They were contesting pursuit through collection mechanisms of debts that were discharged in bankruptcy. But under your multi-base connection. Not mine. I'm asking you. Well, no, I don't think Scheffler goes that far. Thomas clearly said that was an illegal charge. It was a practice that they were using to collect their bills. Practice, not a charge. Well. There's a difference. If they had, and if they were throwing on a late charge as well, that they did not have a right, that they were not authorized to collect, that would still be an illegal charge. Here, Bell has to follow. You're saying Thomson supports your position. Yes, Thomas, yes. Thomas, I'm sorry. Yes. And Scheffler doesn't enter into the consideration? Well, they certainly latched on to Scheffler. What do you mean in your judgment? In my judgment, Scheffler deals with, Scheffler says that reparations should be broadly viewed as dealing with rates and not excessively, you know, in Scheffler, the question was whether, I believe it's the city of Highland Park was suing, saying that because of the outages that had been the lack of service that, I think it's Commonwealth Edison, I could be wrong, that they shouldn't have been able to collect the amount that they did, because they didn't render the services all during that time or during a lot of the time, and so it shouldn't have been that much. Things challenging the how much, the quantity, the, you know, things that the how much was the village of Evergreen Park, the how much was they were getting billed for streetlights and electricity service that they didn't get. Well, not as much. Therefore, they were paying too much, which in this case, arguably, you're claiming that the class members or conmen or underwood were paying too much because they weren't entitled to be charged that late fee. Well, too much is a quantity issue. If my service is out 30% of the time or if there's, you know, if 10% of my streetlights don't get the power, I'm being charged too much when I get, you know, my rate charged, because I'm being charged my rate for the whole thing, whatever my deal is. Because of inadequate service, which is exclusively within the purview of the ICC. Right. Here is a charge that they legally were not entitled to impose, and that's different. We're not, it's not a quantity issue. It is a qualitative, it is a prerequisites issue. Have they done what is necessary to impose the charge at all? We think it's clear that they haven't. Now, and we think that that is certainly in context appropriately done as a damages case. And in fact, you can't bring these as a class case before the ICC anyway. But whatever, in order to have an effective remedy, this is one for which the effective remedy is to allow the case to proceed in court. While I believe that the two cases should never have really been separated, I understand our difference in view. This is and has always been dating back to an initial violation, a settlement, which we thought resolved it and would resolve it for all time. But then it turned out to our shock, well, and our surprise, that they weren't doing it. And we brought it to their attention. Anyway, we would ask that the court reverse both cases, send them back with instructions to enter summary judgment for the class for a recovery of the $126 million that Bell recovered during a time when it was operating knowingly in violation of the regulation. I suppose the administrative code, I suppose you would say in the second case and for the breach in the first case, which incorporated the administrative code provisions. Thank you. I think I've got what I need. I hope so. Thank you, Your Honor. Are we ready? Thank you. The issue here is subject matter jurisdiction. That's the issue that Judge Palmer ruled on. In the complaint, we go to the complaint. It's based on my opponent's view of the old Commerce Commission regulation up until March 2010. Now, they're saying their view is it's an absolute condition, has to be an official Postal Service postmark on all bills or no late fees. This is a strict liability view. No discretion, no facts and circumstances, no showing of harm. They have no intention of making any showing of harm, and we don't think that they can. There's no allegation of any causal connection. No allegation that having a postmark or not having a postmark has anything to do with anyone paying late. And no allegation that the absence of an official postmark and just having our date and mark in the window, as the Postal Service allows, caused every single late payment over eight years all across the state. No allegation of harm. No allegation that anyone didn't have enough time to pay their bills. The evidence has shown that they had plenty of time, 21 days. And our systems are set up so that they always get 21 days. That's why Judge Palmer was right to dismiss. It's a classic reparations claim. In the words of the statute, it's a claim concerning, quote, a rate or other charge. In the words of Sheffler, it's a claim for reparations because, quote, the essence of the claim is a utility has charged too much for service. That's not what he's saying. It's not that he charged too much. It's that they charged at all, having not abided by the regulations. Well, there's two points there. His claim is if you don't follow the regulations, you cannot collect. It's not how much you collect or what you collect. You can't collect it if you don't follow it. Well, there's two problems with that argument, Your Honor. The first is he's looking at the late charge in isolation. The late charge is not something that we impose in isolation. It is part of the rate structure for phone service. It's part and parcel of that. You don't get a late charge unless you provide phone service. You can set up your rate structure. You have to set up the rate structure to address the fact that some people are going to pay later than others. One way you could do it is have just everybody pays more. Another way to do it, which is what we did, is some people, if you pay before the due date, you pay $50. If you pay after the due date, you pay $55. What my opponent is saying is I think you charged too much. You charged me $55. I want $50. He's acknowledging that $50 is a problem. You didn't put the information that the regulation says on the envelope. Therefore, you can't collect. Well, that's his view of the merits of the case. Right. But, again, that goes straight to the charge, and it goes straight to what is he paying on this phone bill. You're saying basically, look, I paid $55. I should have paid $50. You charged me too much. That's the essence of the claim. There's no allegation of harm. You can't charge. You cannot charge because you did not follow the regulations. Right, and that's squarely a reparations claim. That's basically, look, you did not follow the commission's requirements for imposing the charge. We disagree about that. That's the merits. But you didn't follow what the commission said. Strict liability. There's no showing of harm here, no showing of causation here. It's purely a strict liability view of what you're entitled to charge. You charged me too much. What's the relationship between the administrative code and the tariff? Well, the tariff is what governs the rights and obligations between us and the consumer. If you're going to file a complaint in circuit court, you have to allege a violation of the tariff. If you don't, if the tariff says, the tariff speaks to late charges, this is when you can impose a late charge. Now, if my opponent was saying, well, I think that they can't file a tariff if it conflicts with the regulation, but that's an issue the commission has to sort out. The commission is the only body that can – a tariff is the law, and the commission is the only body that has authority or jurisdiction to entertain doubts or questions about the validity of a filed tariff. I think Mr. Krizloff's position is because they violated the administrative code, your client did, that that gets him into the circuit court and out of the ICC. Right, and there's no authority for that. That's why I asked what's the relationship between the administrative code and the tariff and the exclusive jurisdiction of the ICC. Well, the tariff tells you two things. First, it tells you, look, because a tariff – we're required to tariff what's in our rate structure, what is related to the rates. So, when you file a tariff, you're saying, this is our rate structure. So, when you put the conditions and practices for assessing late charges into a tariff, that shows you that it's part of the rate structure. And what Scheffler tells us is that you have two prongs. One is, are you complaining about the charge, which they are doing, or are you complaining about something that's directly related to the charge? And that's, again, the late charge is directly related to the phone bill. You don't get assessed a late charge in a vacuum. You can only get assessed a late charge if you buy the phone service and the amount is based on what you pay for the phone bill. So, if you look at the case of Adler v. Illinois Commerce Commission, they say, look, in that case it was a tax. They're saying, look, this is directly related to the phone bill. It's part of the phone bill. It's not something separate. So, what you are doing is you're seeking reparations for part of your phone bill. So, again, this is a case where my opponent is saying, I paid 55. I should have paid 50. It's squarely a claim about the amount. And in addition, this idea, well, I shouldn't have been charged at all. There are several cases that hold that that's a reparations case. It's still a dispute. You're still saying it's excessive. If you get charged five and you say it should be zero, you're still saying the five is excessive. We have cases, and there are multiple, that say if you're complaining about the whole thing, that's still a reparations case. The village of Evergreen Park, which you mentioned. You know, you charged me for light bulbs. They didn't work. Too bad. That's a reparations claim. That goes to the commission. Malloy, where they say, you charged me for six days of phone service. You didn't give me any phone service. My phone was out. That's a reparations claim. The commission has to decide those claims in the first instance. It's a complaint about a charge, and they want a refund or a reparation of the charge, no proof of harm, no proof of causation or damages. It's a pure strict liability thing based on the commission's, their view of the commission's regulation. All they're alleging is they think AT&T charged too much for their phone service. And again, the late charges are not only first, they are a charge in and of themselves, but they are directly related to our rate structure for phone service. It's part and parcel. And the tariffs are the documents that govern our relationship. They lay out the conditions for the late charges. So that tells you, yes, this is part of the rate structure, and in addition that gives you an alternative basis for affirmance, because you can't bring an action in circuit court if the tariff speaks to your claim, which this does. It says this is when we assess late charges, and there's no allegation that we did not comply with our tariff. Then that's another basis for saying, look, if you're just complaining about the tariff, you think there's something wrong with the tariff, you've got to go to the commission. So there's two routes, and they both take us to the commission. They have the exclusive jurisdiction to decide validity of tariffs, and they have the exclusive jurisdiction to decide if charges in the tariff, the rate structure, should be changed or refunded. Moreover, this is a case where the commission should decide this question. If you look at the reparation statute, it specifically gives the commission discretion. If they find an excessive charge, they may award reparation, because they understand the industry. They understand the rate structure. They understand the side effects. They should have discretion to decide, in the first instance, if reparations are appropriate in a particular case. And in this case, they wrote the regulation. They understand how it fits within the tariffs and the rate structure. They understand their intent in what they wrote, and they get deference from the courts when it comes to interpreting their own regulations. Moreover, they just looked at this regulation. They understood that many carriers, like APE, not just AT&T, use these modern mailing methods, and they're fully aware of my opponent's position. He filed a complaint with them in 2006. They decided that he released those claims under the settlement agreement, but they told this court, we can take this matter up on our own motion, and they did. They didn't say that the regulation absolutely required postmarks as a condition of any late fees, strict liability, refund automatic, no showing of harm. They didn't say there should be mass forfeitures. They did just the opposite. They clarified the regulation, and the words of the staff report are very clear. They say, look, we don't agree with my opponent's position, but in the interest of clarity, we think you should revise the language. That's page two of the staff report, which is in our supplemental appendix. This regulation was in effect for decades, and the commission has never adopted my opponent's position, and no one but my opponent has ever asked them to. Now, just as it's clear this is a reparations case, it's clear that it's not a damages case under section 5-201, because a damages case requires damages and causation. The way the statute is written, it says damages, loss, or injury, quote, caused thereby or resulting therefrom. My opponents have conceded. There's no showing of harm here. There's no showing of causation or damages. They want strict liability refund. That's squarely the type of claim that has to go to the commission, because it affects not only a rate or charge, but it also goes to the rate structure. The complaint in my opponent's file in this case doesn't mention damages, doesn't mention causation, doesn't mention section 5-201. They tried to stick those things into an amended complaint, but there's still no allegation of facts showing any kind of causal nexus between the absence of a postmark, an official U.S. postmark as opposed to a dated mark by us in the window, that that caused anyone to pay late or incur any other harm or any other damages. And we know from the other appeal that they don't have evidence. They're only trying to do this under a pure strict liability claim. A word about Thomas. My opponents are taking two words out of context out of that decision. Thomas doesn't have anything to do with this case. There was no complaint about late fees or any charges on the bill. They weren't asking to have them refunded because they didn't pay them. What they were complaining about was conduct after the bill. Disconnecting service, collection letters after the bills were discharged in bankruptcy. We're talking here about charges on phone bills, not collection letters afterwards, disconnection afterwards, or discharge in bankruptcy. It's based on a commission regulation. Judge Palmer looked at Scheffler. He looked at Thomas. He was right when he held that the substance of this case is a classic reparations claim. And another word about the class that my opponent referred to, class action. Scheffler was a class action. And class action doesn't mean that it has to go to court. You can't say the words class action anymore. You can say illegal charge and then those get you a free pass out of commission. There are multiple class action cases that have been called reparations cases and referred to the commission. This is one. Scheffler is another. There's no damages claim here. We know there can't be. There's no allegation of causation or damages caused thereby or resulting therefrom. It's a pure challenge to a charge on a phone bill and an attempt to reduce phone bills and get a refund with no charge. But Judge Palmer didn't dismiss the case based on failure to state a cause of action. He dismissed it on jurisdiction. Right. So I think you're really arguing that they didn't plead a cause of action where that's not what we're here for. What we're here on, does it properly belong before the ICC or before the circuit court? That's correct, Your Honor. Okay. So, I mean, the confusion of this confluence of all these different facts and circumstances keep taking us away from the issue of the case. You're correct, Your Honor, and I apologize. But what I meant to say was simply, look, you look at the essence of the claim. The essence of the claim is I want a refund. I paid $55 on my phone bill. I should have paid $50. The essence of the claim is not damages because we know there's no allegation of causation or anything like that. We take that straight from the complaint. And what is the theory of the case? Do you have anything else? I have nothing else unless you have any further questions, Your Honor. Thank you. Thank you very much. Thank you. Yes. Flournoy might be another example because Flournoy was a case where the prisoner's calls were cut off so that he had to keep making first calls and get charged for the first minute or whatever it was on the call. And that charging him, he wasn't, although he wasn't complaining that the way that they charged him first calls was a problem. He was saying that he had to pay a first call charge because they were cutting off his calls short, meant that they were illegally charging him for first call again and again and again and again. That their conduct. Yes. Their conduct was causing him to pay more times than he should have been paying. He should have made one call and allowed to speak, pay $1, whatever it was. But, no, they kept cutting him off. Right. He had to keep recalling and keep paying another fee. But that's still an illegality. That was still a damages case. Conduct. Well, but this is conduct, too. This is the conduct in date stamping their envelopes or not. And the tariffs, you know, they may, they can't rephrase when a bill is due, when the administrator, they can't phrase their conduct when it conflicts with the administrative code. They might, within the framework of whatever the administrative code permits them to do, I guess they can put in a tariff that, you know, establishes certain rates and whatever. They can do that. But they cannot redefine everything so that everything becomes double speak to whatever Bell really wants to do. And I think the thing that is most troubling is that even after they do this business with a tariff, they never asserted the tariffs in the past as a defense. They just, you know, Sheffler comes out and bingo, suddenly we've got this whole new argument that they're going with after years of litigating the issue in a different front. If there wasn't jurisdiction, if there wasn't jurisdiction, then the first case, there was never, there should have never been any jurisdiction for that. And when we were referred over to the. You settled the first case. You were in the ICC. Well, we were referred over. Did that make the settlement void and you're not entitled to anything? Oh, no, but you can't consent to jurisdiction. You can't consent to jurisdiction maybe at all, but you acknowledge that this could have been primary that they would have said this was primary jurisdiction. So the primary jurisdiction means that you could refer it out to the to the ICC, which is essentially what judge. I forget what the gentleman's name was at the time. In this case, it's been through a lot. And that judge has since Siebel. No, this is long before Siebel. Pardon over. Yes. Green? No, not Green, but Hofer, I think. Because Hofer was the first judge who I believe referred it over. Referring it over means that the court has jurisdiction to begin with, but can refer it over for a primary jurisdiction on the issue of compliance. We're not arguing. We're not, but they can't argue now that there was never, that there was not jurisdiction, because that contradicts their view of it going back to the beginning. I mean, that's sort of like the mend the hold concept, that you can't keep changing your defense as things go on for whatever happens to come your way. We think that in context, both cases show Bell's intentional violation of the administrative code provision and the settlement agreement, and that they should not profit from that intentional violation, and that they should have to return $126 million. I'll give you the exact figure if you want, but it's in there. Anyway, we would ask that you reverse and remain with directions to enter judgment for the plaintiff. And thank you for the time. I often complain that the appellate court doesn't grant enough, doesn't grant oral arguments as often as it should, and so I guess we're even now. We're swallowed up. We're swallowed up. Thank you, and we'll take the matter under the table. Thank you, gentlemen. Thank you. Thank you.